IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TIMOTHY W. ST. CLAIR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:13-CV-571 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Timothy W. St. Clair ("St. Clair"), challenges the decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Specifically, St. Clair alleges that the Administrative Law Judge ("ALJ") failed to contact a consulting physician when necessary, improperly assessed his mental impairments, and erroneously discounted his credibility. I conclude that substantial evidence supports the ALJ's decision as a whole. Accordingly, I **RECOMMEND DENYING** St. Clair's Motion for Summary Judgment (Dkt. No. 17), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 20.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that St. Clair failed to demonstrate that he was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant

---

[1] The Act deems a person disabled for SSI purposes "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."

1

evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **CLAIM HISTORY**

St. Clair filed for SSI on November 7, 2011, claiming that his disability began on September 1, 2004. R. 23, 164–72. He subsequently amended his disability onset date to November 4, 2011. R. 49. The Commissioner denied his application at the initial and reconsideration levels of administrative review. R. 105–09, 115–18. On June 11, 2013, ALJ Geraldine Page held a hearing to consider St. Clair's disability claim. R. 42–71. St. Clair was represented by an attorney at the hearing, which included testimony from St. Clair and vocational expert Gerald Wells. Id.

On July 19, 2013, the ALJ entered her decision analyzing St. Clair's claim under the familiar five-step process[2] and denying St. Clair's claim for benefits. R. 23–35. The ALJ found that St. Clair suffered from the severe impairments of hepatitis-C, right knee sprain/strain,

---

42 U.S.C. § 1382c(a)(3)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. § 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

2

generalized mild osteoarthritis of multiple joints, bipolar disorder, anxiety disorder; personality disorder, asthma, and polysubstance abuse in remission. R. 26. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 26–28.

The ALJ found that St. Clair retained the RFC to perform a range of light work.[3] Specifically, the ALJ determined that St. Clair can lift or carry up to twenty pounds occasionally and ten pounds frequently; sit, stand or walk for up to six hours in an eight hour workday with the option for a brief change of posture between sitting and standing at the workstation at thirty-minute intervals; frequently handle, finger, feel and reach bilaterally; occasionally balance, stoop, kneel, crouch, crawl and climb ramps or stairs; never climb ladders, ropes or scaffolds; and occasionally operate foot controls. R. 28. The ALJ also found that St. Clair should avoid concentrated exposure to vibration, moderate exposure to extreme temperatures, excess humidity, wetness, pollutants and irritants; and all exposure to hazards. The ALJ determined that St. Clair is able to understand, remember and carry out simple instructions in repetitive unskilled work that involves no interaction with the general public and no more than occasional interactions with coworkers and supervisors; however he retains the ability to respond appropriately to supervision, coworkers and usual work situations. R. 28. The ALJ determined that St. Clair could not return to his past relevant work as a roofer helper and professional boxer (R. 33), but that St. Clair could work at jobs that exist in significant numbers in the national economy such as assembler, addresser, inspector, tester, and sorter/gauger. R. 34. Thus, the ALJ concluded that St. Clair was not disabled. R. 34. On November 12, 2013, the Appeals Council denied St. Clair's request for review (R. 1–6), and this appeal followed.

---

[3] An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite his limitations. 20 C.F.R. § 416.945.

3

## ANALYSIS

St. Clair's arguments in this case relate solely to his mental impairments. The ALJ adopted the opinion of consultative physician, Dr. Gardner, that St. Clair can perform simple, repetitive, unskilled work and maintain regular attendance at work despite having moderate limitations in maintaining concentration and attention, and moderate limitations in his social interaction with co-workers and supervisors. St. Clair argues that Dr. Gardner's opinion is internally inconsistent and unsupported; and thus, the ALJ should have contacted Dr. Gardner to resolve the inconsistency in his report. St. Clair also argues that the ALJ did not properly assess his mental impairments with the in depth analysis required by the regulations, and that the ALJ erred in discounting St. Clair's credibility. Having reviewed the records as a whole, I find that the ALJ's findings with regard to St. Clair's mental impairments are supported by substantial evidence.

The medical records reflect that St. Clair has a history of mental illness.[4] St. Clair was incarcerated from November 2008 through November 2011 at Pocahontas State Correctional Center. R. 49. On November 23, 2011, a few weeks after his release from prison, St. Clair reported to Blue Ridge Behavioral Healthcare ("Blue Ridge"), requesting to see a psychiatrist to obtain medications. R. 371. Blue Ridge offered only substance abuse treatment, which did not interest St. Clair at the time, so he received a referral to other mental health facilities. R. 371. St. Clair returned to Blue Ridge on January 9, 2012, but was again notified that substance abuse treatment was the only service available. R. 372.

On January 25, 2012, St. Clair sought treatment with Hall Community Services seeking medications for his psychological issues. Narendra Shah, M.D., noted St. Clair's prior

---

[4] St. Clair's arguments in this case relate solely to his mental impairments; thus, I will not discuss the records relating to his physical impairments.

4

psychological history, and diagnosed him with bipolar, explosive and anti-social disorders. Dr. Shah recommended supportive therapy and prescribed Seroquel, Lithium and Xanax. R. 374. St. Clair returned to see Dr. Shah on February 22, 2012, and was anxious and irritable, but fully oriented with pressured speech, was cooperative, had alert and oriented functioning, and no impairment in daily patterns. R. 377. On March 21, 2012, Dr. Shah noted that St. Clair "overall seems to be doing ok and functioning at his optimal level." R. 376. On examination he was well-groomed, fully oriented, cooperative, alert, but anxious. R. 376. Dr. Shah noted signs of early dementia. R. 376.

On August 7, 2012, St. Clair visited David Mortlock, M.D., who refilled St. Clair's prescriptions. R. 472. Dr. Mortlock continued to re-fill St. Clair's psychiatric prescriptions through 2013. On January 14, 2013, St. Clair returned to Dr. Mortlock for a checkup and noted that he was "doing well." R. 522. However, shortly thereafter, a urine drug screen was positive for cannabis, and Dr. Mortlock referred St. Clair to Blue Ridge for treatment. R. 494, 512, 514. While at Blue Ridge, St. Clair was diagnosed with bipolar I disorder, MRE Manic, severe, with psychotic features and hallucinations as well as cannabis abuse. R. 514. St. Clair reported that he relapsed and used marijuana on New Year's Eve 2013 after a five year abstinence. R. 498.

On February 12, 2013, St. Clair reported to Blue Ridge that he had not been on any medication since October 2012 because his Medicaid coverage ran out. He reported racing thoughts and trouble sleeping. R. 483. On February 28, 2013, St. Clair was still not on his medications and reported experiencing mood swings, anger, agitation, racing thoughts and crying spells. R. 489.

St. Clair returned to Blue Ridge on March 17, 2013, and reported that he was back on his medications and he was having difficulty sleeping. R. 484. On March 21, 2013, St. Clair noted

5

that he was doing better and Cymbalta helped improve his mood, although he continued to complain of problems with sleeping and memory. R. 484. On April 17, 2013, Blue Ridge physician Saira Arif, M.D., noted that St. Clair was stable overall since he got back on his medications in February. St. Clair stated that he still had racing thoughts and ruminative thinking that mostly affects his sleep at night. He reported a good appetite, depressed mood, and crying spells, but denied current psychotic symptoms. R. 486. He was diagnosed as Bipolar I with psychotic symptoms, and instructed to continue his medications with an increased Seroquel dose. R. 486–87.

On July 17, 2013, St. Clair was again off his medication because he could not afford the co-pay, and presented as agitated. R. 536. He was given a co-pay waiver and told to obtain his medications. The following day, St. Clair was back on his medications and said he was doing okay. R. 536.

On September 3, 2013, St. Clair was taken to the emergency room by the police because he was hearing voices and having suicidal/homicidal thoughts. R. 548. He had not taken any medications for over a week, and had only slept about two hours in the past week. R. 548. St. Clair was admitted to the psychiatric rehab at Carilion Clinic, and reported that over the past six months his mood "has been more depressed although he reports having had periods where he was feeling normal or near-normal." R. 563. He also reported abusing drugs including cocaine and cannabis quite frequently and abusing some benzodiazepines and pain killers. R. 563. The clinic restarted St. Clair on his medications, and his mood and sleep improved. He was discharged on September 6, 2013 in stable condition with prescriptions for medications. R. 564. Upon discharge, St. Clair had normal eye contact and impulse control, no psychomotor disturbances, normal speech, a good mood and appropriate affect, linear and logical thought

6

processes, and no active suicidal or homicidal ideations, hallucinations, delusions or obsessions. He had normal insight, judgment, cognition, attention and concentration. R. 566.

The record contains three opinions with regard to St. Clair's mental impairments; two rendered by state agency reviewing physicians Andrew Bockner, M.D. and Joseph Leizer, Ph.D. (R. 82–83, 99–101), and one from consultative physician, Marvin A. Gardner, Jr., Ph.D. R. 425–31. The ALJ found the opinions "unified in their conclusions, which add significant probative value to their findings." R. 32.

Drs. Bockner and Leizer concluded that St. Clair has moderate limitations in social functioning and maintaining concentration, persistence and pace. Dr. Bockner found that St. Clair's ability to interact appropriately with the general public is markedly limited. R. 82. Both physicians agreed that St. Clair can understand and remember simple instructions, would be able to complete a workday/workweek, and that he is able to handle limited contact with others, including coworkers and supervisors. R. 82–83, 99–101.

Dr. Gardner examined St. Clair on September 12, 2012 and performed a mental status exam and cognitive functioning tests. R. 425–31. He found that St. Clair had a moderate impairment of concentration and a moderate impairment in social interaction with supervisors and with the general public. R. 430. Dr. Gardner concluded that St. Clair was able to perform simple and repetitive tasks and maintain regular attendance in the workplace. Id. Dr. Gardner further concluded that St. Clair was able to perform work activities without special or additional supervision and was unlikely to decompensate due to the usual stress encountered in competitive work while remaining compliant with this psychiatric medications. R. 430.

7

**Duty to Recontact Physician**

St. Clair argues that Dr. Gardner's findings that he had moderate impairments in concentration and social interaction contradict his conclusion that St. Clair can perform simple, repetitive tasks and maintain regular attendance. Thus, St. Clair asserts that the ALJ was required to contact Dr. Gardner to resolve this perceived conflict in his opinion. St. Clair's argument simply amounts to a disagreement with Dr. Gardner's conclusions.

St. Clair relies upon 20 C.F.R. § 416.920b(c) which states that the commissioner "may" recontact a treating physician, psychologist or other medical source if after weighing the evidence the Commissioner cannot reach a conclusion about whether the claimant is disabled. However, the regulation further states, "[i]f all of the evidence we receive, including all medical opinion(s), is consistent and there is sufficient evidence for us to determine whether you are disabled, we will make our determination or decision based on that evidence." 20 C.F.R. § 416.920b(a). Additionally, Social Security Ruling ("SSR") 96–5p states that "if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion."[5]

Here, Dr. Gardner's opinion did not trigger a duty by the ALJ to recontact, because the record was adequate to determine if St. Clair was disabled, and the opinion did not contain a conflict or ambiguity that must be resolved. See, e.g. Majica v. Astrue, No. 06-2900, 2007 WL 4443247, at *3 (E.D. Pa. Dec. 18, 2007).

---

[5] Notably, the regulation only refers to recontacting treating sources, and does not appear to apply to a consultative physician such as Dr. Gardner. SSR 96–5p, 1996 WL 374183 (SSA) (July 2, 1996).

8

St. Clair argues that because Dr. Gardner found that he has moderate impairments in concentration and social interaction, Dr. Gardner's conclusion that he can perform simple and repetitive tasks and maintain regular attendance in the workplace must be in error. St. Clair offers no support for this theory; aside from his own say so. St. Clair also fails to address the two state agency physicians who make similar findings and reach the same conclusions as Dr. Gardner.

The ALJ noted no ambiguities or confusion regarding the content of Dr. Gardner's opinion. Rather, the ALJ reviewed Dr. Gardner's findings in detail, and noted that St. Clair's performance on the mental examination support Dr. Gardner's conclusions as to his limitations. Dr. Gardner found that St. Clair exhibited poor eye contact, neutral mood, and blunt affect, but had responsive, understandable speech and a cooperative disposition. R. 425–29. St. Clair's immediate recall and recent memory were moderately impaired and his long-term memory was poor. R. 429. His computation skills were within normal limits, and he was able to program his cell phone to remind him to take his medications. Further, while St. Clair's concentration was moderately impaired, he had normal insight, judgment and abstract thinking. R. 429. He did not appear distracted during the interview by an internal stimulation, and was able to accept all instructions and respond appropriately. R. 430. Dr. Gardner noted that while St. Clair may strike the general public as "odd," he would have no more than a moderate impairment in social interaction with supervisors and the general public. R. 430. Dr. Gardner noted that St. Clair had maintained employment for up to two years with the same employer in the past. R. 430.

Based upon his findings and examination, Dr. Gardner concluded that St. Clair could perform simple and repetitive tasks and maintain regular attendance in the workplace. R. 430. There is no apparent conflict between Dr. Gardner's findings and his conclusions, and they are

9

supported by all other opinions in the record. In sum, Dr. Gardner's opinion does not contain an inconsistency that required further inquiry from the ALJ, and substantial evidence supports the ALJ's decision to give great weight to Dr. Gardner's conclusion that St. Clair is capable of performing simple, unskilled work and maintain regular attendance in the workplace.

### Assessment of Mental Impairments

St. Clair also challenges the ALJ's assessment of his limitations in concentration and social interaction when developing his RFC. Social Security Ruling ("SSR") 96-8p provides a framework for evaluating a claimant's mental RFC at step four of the sequential analysis, and provides, in pertinent part:

> The psychiatric review technique…requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8p, 1996 WL 374184; Teague v. Astrue, No. CA 1:10-2767-MBS-SVH, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). SSR 96–8p also requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p at *7; Meadows v. Astrue, No. 5:11CV00063, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. JKS 09-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 16, 2010)).

10

St. Clair's assertion that the ALJ in this case "simply limit[ed] plaintiff to simple, routine, repetitive, unskilled tasks with nor[sic] more than occasional interaction with the public, co-workers, or supervisors without further narrative discussion of plaintiff's mental RFC," is unfounded. Pl. Br. Summ. J. p. 14. Here the ALJ considered medical and non-medical evidence in assessing St. Clair's RFC and provided the narrative discussion required by the regulations. The ALJ discussed St. Clair's testimony with regard to his mental limitations and his symptoms of racing thoughts, mood swings and hallucinations. R. 30. The ALJ reviewed St. Clair's mental health treatment records in detail, and noted "[w]hile the claimant had moments where he alleged hallucinations, mood swings and severe mental dysfunction, this was attributed entirely to the claimant not taking his medication (Exhibits 5F & 18F). Conversely, when the claimant took his medications as prescribed, he reported dramatically diminished symptoms and saw improvement in his overall GAF score (Exhibits 5F & 18F)." R. 31.

The ALJ next considered the three opinions in the record regarding St. Clair's mental conditions, and reviewed their findings in detail. R. 32–33. The ALJ appropriately noted that no treating source issued an opinion that reached a different conclusion. R. 33. Based upon the three opinions that were all in agreement, and Dr. Gardner's findings upon mental examination of St. Clair, the ALJ arrived at her RFC determination. R. 33.

The ALJ did not "simply limit plaintiff to unskilled work without more discussion and analysis." Pl. Br. Summ. J. p. 15. Rather, the ALJ did exactly what SSR 96-8p directs by addressing the nature and extent of St. Clair's mental limitations and determining the RFC on the basis of a thorough review of the evidence of record. See Maner v. Colvin, No. CA 1:12-2969-RBH, 2014 WL 4656383, at *15 (D.S.C. Sept. 17, 2014); Paschall v. Astrue, No. 5:10-CV-161-FL, 2011 WL 1750757 at *9 (E.D.N.C. May 6, 2011). Consequently, I find that St. Clair's

assertion that the ALJ's opinion should be more "specific" and "detailed" is unsupported by this record and the case law.

### Concentration, Persistence and Pace

The ALJ found that St. Clair retained the functional capacity to "understand, remember, and carry out simple instructions in repetitive, unskilled work that involve no interaction with the general public and no more than occasional interaction with coworkers and supervisors; however, the claimant retains the ability to respond appropriately to supervision, coworkers and usual work situations." St. Clair claims that this limitation in the RFC does not properly account for his moderate impairment with concentration, persistence and pace. As a result of this alleged inadequacy, St. Clair contends that the ALJ did not pose a hypothetical question that included the moderate limitations of maintaining concentration, persistence, and pace to the vocational expert.

In Mascio v. Colvin the Fourth Circuit held that an ALJ does not generally account for a claimant's limitations in concentration, persistence, and pace by restricting the claimant to simple, routine tasks or unskilled work. The court noted, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. at 638; see also Sexton v. Colvin, 21 F. Supp. 3d 639, 642–43 (W.D. Va. 2014) (citing Wiederholt v. Barnhart, 121 Fed. Appx. 833, 839 (10th Cir. 2005) (holding that a "limitation to simple, unskilled work does not necessarily" accommodate a person's difficulty in concentrating on or persisting in a task, or maintaining the pace required to complete a task). In Mascio, the Fourth Circuit found that the ALJ did not explain why Mascio's moderate limitation in concentration, persistence, or pace did not translate into a limitation in his RFC. The court noted, however, that the ALJ may find that the concentration, persistence or pace limitation would not affect Mascio's ability to work, in which

12

case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. 780 F.3d at 638; see also Hutton v. Colvin, No. 2:14-cv-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015).

Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence, or pace limitation does not affect the ability to perform simple, unskilled work. The ALJ has the responsibility to address the evidence of record that supports that conclusion.

The Mascio court relied upon Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011), where the court rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the claimant to simple, routine tasks or unskilled work. However, the Winschel court explained that:

> when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.

Id. (internal citations omitted). Courts within the Fourth Circuit have come to rely upon Winschel's reasoning to comply with Mascio. See Gardner v. Colvin, No. CIV. TMD 14-100, 2015 WL 1508835, at *8 (D. Md. Mar. 31, 2015). Likewise, in Hutton v. Colvin, the court held that a restriction of "unskilled work" accounted for claimant's limitations with concentration, persistence or pace where the ALJ examined the claimant's ability to perform daily activities such as paying bills and counting change in the step 4 analysis, and noted that his treating

13

physicians found that he exhibited good attention, intact memory, logical thought flow, and good immediate and recent memory. 2015 WL 3757204, at *3–5. The court found that these reasons constituted "abundant explanation" for the ALJ's RFC findings regarding the claimant's concentration limitations, and thus, there was no error in the ALJ's conclusion that the claimant could perform unskilled work. Id.

The Winschel court relied upon several other circuits which have held that an ALJ may exclude a moderate limitation in concentration persistence and pace from either the RFC or the hypothetical presented to the vocational expert where the evidence reflects that the claimant can perform simple, unskilled work. See Simila v. Astrue, 573 F.3d 503, 521–22 (7th Cir. 2009); Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1173–76 (9th Cir. 2008); Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001); see also Wiederholt v. Barnhart, 121 Fed. Appx. 833 (10th Cir. 2005). Additionally, other circuits have held that an ALJ may adequately address a claimant's limitations in concentration, persistence, and pace through hypothetical questions presented to the vocational expert which include evidence or opinions that account for these limitations. See e.g., Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) (holding that the ALJ's hypothetical adequately incorporated concentration, persistence or pace limitations where he directed the vocational expert to consider a specific portion of the record that included those deficiencies); Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001) (finding that the ALJ did not err by failing to include deficiencies in concentration, persistence, or pace where the hypothetical incorporated concrete restrictions identified by examining psychiatrist regarding quotas, complexity, and stress).

For example, in Stubbs-Danielson v. Astrue, the court affirmed the RFC which limited the claimant to "simple, routine, repetitive sedentary work, requiring no interaction with the

14

public" despite having moderate limitations in concentration, persistence, or pace where the state agency reviewing psychologist found that despite the claimant's slow pace and moderate limitations in other mental areas, she retained the ability to carry out simple tasks. 539 F.3d at 1173–76. Likewise, in Howard v. Massanari, the court explicitly rejected a claim that an ALJ's hypothetical describing an ability to do "simple, routine, repetitive work" failed to capture deficiencies in concentration, persistence, or pace, where the state agency psychologist concluded that the claimant, despite certain pace deficiencies, retained the ability to do simple, repetitive, routine tasks. 255 F.3d at 582.

Thus, Mascio reiterates the long-held proposition that substantial evidence in the record must support the limitations contained in the RFC and included in the hypothetical question presented to the vocational expert. An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Here, the ALJ accounted for St. Clair's impairment with concentration by limiting him to work that is unskilled, repetitive and has simple instructions. Ample evidence supports the ALJ's conclusion that St. Clair is capable of understanding, remembering and carrying out simple instructions in repetitive, unskilled work. Drs. Bockner, Liezer and Gardner all concluded that despite his moderate impairment with concentration, persistence and pace, St. Clair was capable of understanding and remembering simple instructions and repetitive tasks, and was capable of completing a workday and workweek. R. 82–83, 99–101, 425–31. Dr. Gardner specifically tested St. Clair's concentration, and determined that St. Clair was able to count by twos up to twenty in

15

eleven seconds with no errors and to count backwards by twos from twenty in two seconds [sic] with no errors. R. 429. He was able to complete serial threes in one minute with four errors and to complete serial sevens in one minute and forty seconds with two errors. Id. Dr. Gardner concluded that those test results evidenced a moderate impairment in concentration, but that St. Clair can perform simple and repetitive tasks, maintain regular attendance, has adequate executive functioning to perform simple and non complex work tasks, and was able to focus on questions and respond appropriately. R. 430. There is no evidence in the record that suggests that St. Clair's moderate impairment with concentration, persistence or pace would prevent him from completing a normal workday or workweek without interruption or completing work activities on a consistent basis. See Claiborne v. Comm'r, No. SAG-14-1918, 2015 WL 2062184, at *3 (D. Md. May 1, 2015) (citing Dean v. Comm'r, No. SAG-14-1127, 2015 WL 1431548, at *1–2 (D. Md. Mar. 26, 2015) (ALJ appropriately limited claimant to simple, repetitive, routine tasks where claimant remained persistent throughout the mental functioning testing process and was able to sustain attention).

Thus, this is not a situation like Mascio, where the ALJ summarily concluded that a limitation of simple, unskilled work accounts for a claimant's moderate impairment in concentration, persistence and pace with no further analysis or consideration. Rather, the medical evidence overwhelmingly supports the conclusion that despite his moderate limitation in concentration, persistence or pace, St. Clair is capable of performing the basic mental demands of simple, repetitive, unskilled work.

Considering the record as a whole and specifically referring to the consultative and reviewing physicians' opinions in the record and their determination of St. Clair's ability to work, the ALJ determined that while such limitations existed, they did not preclude St. Clair

16

from performing repetitive unskilled work with simple instructions. The ALJ included the mental limitations recommended by Drs. Bockner, Liezer and Gardner and set forth in the RFC in the hypothetical question given to the vocational expert, and the vocational expert concluded that St. Clair could perform jobs that exist in the national economy such as assembler, addresser, and inspector/sorter. R. 67–69. Consequently, I find that St. Clair's assertion that the ALJ erred by failing to properly account for his limitations in concentration, persistence and pace is without merit.

### Credibility

St. Clair argues that the ALJ erred by failing to properly evaluate his credibility. Specifically, St. Clair alleges that the ALJ failed to consider that he received sporadic treatment due to financial hardship, and erroneously concluded that his symptoms diminished when he took his medications as prescribed. Pl. Br. Summ. J. p. 17–18. St. Clair also argues that Mascio requires the ALJ to explain how she decided which of St. Clair's statements to credit and which to discredit.

In Mascio, the court determined that nowhere did "the ALJ explain how he decided which of Mascio's statements to believe and which to discredit, other than the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering Mascio's residual functional capacity ." 780 F.3d at 640. It was this "lack of explanation," the court held, which "requires remand." Id.

In this case, the ALJ found that St. Clair's statements concerning the intensity, persistence and limiting effects of his allegedly disabling symptoms are not fully credible because they are not fully supported by the medical evidence as a whole. R. 31. In the pages of her decision preceding and following this statement, the ALJ thoroughly considered the evidence

17

of record, and provided support for the determination of St. Clair's credibility. R. 31–33. Specifically, the ALJ discussed the lack of objective support in the record for St. Clair's physical conditions, his sporadic treatment history, how the symptoms from his mental conditions diminished with medication, and the medical opinion evidence. R. 31–32. Thus, this case is distinguishable from Mascio because the ALJ properly and thoroughly analyzed St. Clair's credibility and provided an explanation for finding St. Clair less than fully credible.

The ALJ's determination that St. Clair's symptoms of his mental impairments greatly diminished when he was taking his medications is fully supported by the record. St. Clair's medical history, set forth in detail above, reflects that St. Clair's symptoms are generally controlled when he is properly medicated. Certainly, medications did not cure St. Clair's mental impairments or entirely eliminate his symptoms. However, as the ALJ noted, they controlled his symptoms to the extent that he was capable of a limited range of light work.[6]

With regard to St. Clair's financial inability to obtain treatment, the ALJ's decision does not reflect that she discounted his credibility as a result of his failure to obtain additional treatment. The ALJ noted that St. Clair's records lack a "consistent treatment history that would corroborate the severity of the allegations." R. 31. The ALJ then discussed the contrast in St. Clair's mental health symptoms while medicated versus unmedicated. Although the ALJ noted a lack of consistent treatment history, the ALJ did not posit any reasoning or basis for that failure. The ALJ did not indicate that St. Clair was somehow to blame for failing to obtain additional treatment. At most, the ALJ found that St. Clair's treatment history reflected that his symptoms were largely controlled while medicated, which contradicted the severity of his allegations.

---

[6] If a symptom can be controlled, within reason, through medication or treatment then it is not disabling. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986).

18

In sum, there is no indication in the ALJ's opinion that she failed to recognize that St. Clair suffered from financial hardship, or that she discounted his credibility as a result of his failure to obtain additional treatment.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.) Here, substantial evidence supports the ALJ's determination that St. Clair's testimony regarding his impairments is only partially credible. Thus, I find that the ALJ's credibility determination is entitled to deference.

## CONCLUSION

Given the findings set forth above, I recommend that the Commissioner's decision be affirmed, the defendant's motion for summary judgment be **GRANTED**, and St. Clair's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such

objection.

    Enter: August 11, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge